IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                                  *
SHIRLEY L. ROHRBAUGH,                   *   CHAPTER 13
        Debtor                          *
                                        *   CASE NO. 1:14-bk-00193 MDF

## OPINION

Before the Court is a motion filed by Lawrence V. Young, Esquire ("Young"), counsel for Shirley L. Rohrbaugh ("Debtor"), seeking reconsideration of an Order entered on August 5, 2014 approving his application for compensation but reducing the award below the amount requested. For the reasons that follow, the motion will be denied.[1]

## I. Procedural History

Young filed the instant Chapter 13 petition on Debtor's behalf on January 16, 2014. On July 7, 2014, he filed his "First Application for Allowance of Compensation and Expenses" (the "Application") seeking $21,638.50 for legal services and $721.36 for reimbursement of expenses incurred by his law firm, CGA Law Firm ("CGA"), between October 30, 2013 and June 25, 2014 in connection with the Chapter 13 case. The Application included a statement from Debtor that she had previously reviewed the fees and agreed to pay them. The Application was properly noticed to creditors and no objections were filed. On August 5, 2014, after reviewing the Application, the Court entered the Order (the "August 5 Order") at issue approving fees in the

---

[1] Attorney Young is an experienced and capable bankruptcy practitioner. This Opinion focuses on issues pertaining to counsel fees and is in no way intended to cast a negative light on Attorney Young's professionalism or skill. In fulfillment of its duties under 11 U.S.C. § 330 and the decision of the Third Circuit Court of Appeals in *In re Busy Beaver*, *infra*, the Court examines every fee application filed by debtors' counsel in a Chapter 13 case. Fee awards have been reduced in many of these cases, including this one.

amount of $20,643.75 for legal services and $721.00[2] for expenses, but disallowing fees totaling $994.75 as described below.

On August 8, 2014, Young timely filed a Motion for Reconsideration, and a hearing was set to be held on August 26, 2014. Pursuant to the Court's instructions in open court, the hearing did not take place on that date, but Young consulted with the Court by telephone regarding the matter. Thereafter, Young opted to file a brief to argue his case for the full amount of his fees, instead of scheduling another hearing. His brief was duly filed on September 10, 2014 and the matter is ready for decision.[3]

## II. Factual Findings

The August 5 Order was based on the following charges which were either unnecessary (i.e. the work was unnecessary to the case) or unreasonable (i.e. the amount charged was excessive or should not have been charged to the client at all in the exercise of reasonable billing judgment).

In an entry dated January 22, 2014, Young billed his client $32.50 for six minutes to leave a voice mail with an employee at the Farm Services Administration regarding "application of the livestock auction proceeds against the secured loans." The entry lacks any information to

---

[2]The Court fashioned the August 5 Order based on the language and figures provided in the text of the proposed Order submitted by Young with his Application. The proposed Order omitted $.36 from the figure for reimbursement of expenses. The Court did not reconcile the figure on the Application with the figure on the proposed Order prior to issuing the August 5 Order. In the Order that accompanies this Opinion, the Court will allow reimbursement of expenses in the amount of $721.36.

[3]This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (B) and (O). This Opinion constitutes the findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

2

show that on this occasion, Young obtained any information to advance the case or to benefit the estate or the Debtor. Regularly billing clients at minimum time intervals of six minutes for tasks taking seconds to perform is not the appropriate exercise of billing judgment, and the Court finds it unlikely that the call took six minutes.

Similarly, in entries dated February 18 and March 12, 2014, Young billed Debtor $20.00 ($40.00 in total) for twelve minutes on each date (twenty-four minutes in total) allegedly spent by a CGA legal assistant listening to a voice mail message and then returning the call and leaving a message for the caller. Again, the expenditure of time and resources by CGA was minimal, and the entry does not explain how the case was advanced or how any substantive benefit inured to the estate or the Debtor from the limited amount of information exchanged in the messages. Therefore, the fees for both entries were disallowed, and $40.00 was deducted from the total fees requested.

In an entry dated February 27, 2014, Young billed his client $325.00 for his attendance at the creditors' meeting. The Court's policy, based on its experience, is to disallow any amounts greater than $250 for attendance at a routine creditors' meeting. Counsel may obtain a fee greater than $250 if the fee application indicates that the meeting was extraordinarily difficult or time consuming. Young's fee application in this case showed nothing to indicate that this meeting was anything out of the ordinary. Therefore, the Court deducted $75 from the $325.00 that was billed.

In an entry dated March 4, 2014, Young billed his client $1462.50 for traveling to Gettysburg, Pennsylvania for purposes of "inspect[ing] the farm and equipment that are to be subject to an auction in May." Neither the point of departure nor the Gettysburg address at

3

Case 1:14-bk-00193-MDF    Doc 79    Filed 10/01/14    Entered 10/01/14 16:19:29    Desc
Main Document      Page 3 of 13

which he inspected the farm and equipment were specified. He also met with the auctioneer at this time and had a conference with Debtor. These activities were lumped together in a single entry, and so the Court could not determine the amount of time spent on any specific activity in isolation. However, it was clear that Young had billed at his full hourly rate ($325.00 /hr) for traveling to the site. The Court's policy regarding travel time is to allow counsel fees at half the full hourly rate absent special circumstances explained in the fee application. Therefore, the Court queried a popular and reliable internet website, "Mapquest," and obtained an estimate of the amount of time it would usually take to travel from York to Gettysburg and return. The time estimate given was forty-five minutes each way.[4] This estimate was consistent with the Court's general knowledge of the distance and usual travel time between the two municipalities. Rounding upward, the Court gave counsel credit for .8 hours of travel one way. Unfortunately, instead of doubling the .8 hours to 1.6 hours for the round trip, the Court then mistakenly multiplied .8 by half his full hourly rate ($162.50), and concluded that Young was entitled to $130.00 for the trip. Concomitantly, the Court deducted $130 from the total of $1462.50 claimed for the day. Instead, the Court should have allowed travel fees of $260 but also deducted $260 from the total award.

Because the figure in the August 5 Order was in error, and because Young has now supplemented the record with the address at which he inspected the property in Gettysburg, the Court will take the opportunity to more precisely calculate the proper figure. The record does

---

[4]See http://www.mapquest.com/#ec6ad34bbc0ed330fb109d0d, last visited September 24, 2014. See also, *In re Miller*, 447 B.R. 425, 433 (Bankr. E.D. Pa. 2011); *In re Henry*, 266 B.R. 457 (Bankr. C.D. Cal. 2001) (decisions using Mapquest to estimate mileages for purposes of calculating attorneys' fees and expenses.)

not indicate whether he departed from his office in York, or his home, or some other place. Without a specific York address from which to calculate Young's travel time, the Court used Mapquest to calculate the distance between "York, Pennsylvania" and Debtor's property at 450 Red Rock Road, Gettysburg, Pennsylvania. The time indicated was 54 minutes or .9 hours.[5] Rounding up, the Court will find that the one-way trip consumed one hour. Thus, Young will be allowed two hours' travel time at half his hourly rate, which will allow $325 for travel time. $325 will also be deducted from the total amount of Young's request for fees.

Likewise, in an entry dated April 10, 2014, Young billed his client $812.50 for traveling to Harrisburg and meeting with certain individuals regarding some litigation and a forbearance agreement. Again, the entry is lumped, so it is impossible to determine the amount of time spent on travel and the amount spent in meetings. Consistent with the Court's knowledge and experience, "Mapquest" showed that Young's trip to Harrisburg should have taken about 30 minutes,[6] and so he was allowed travel fees of $81.25 ($162.50 x .5) and the same amount was deducted in the August 5 Order. Again, however, the Court erred by calculating fees for traveling only one way. Young should have been allowed $162.50 for travel time, and $162.50 should have been deducted from his fee request. This re-calculation will be included in the Order that accompanies this Opinion.

In an entry dated June 12, 2014, Young billed Debtor $1625 for five hours' time in traveling to her farm to "participate" in the auction of her farm equipment and real estate.

---

[5]See http://www.mapquest.com/#b48b4f71009dadcb7f23e69e last visited September 26, 2014.

[6]See http://www.mapquest.com/#a687c6993a28f7df8f7ea7f8 last visited September 24, 2014.

5

Case 1:14-bk-00193-MDF    Doc 79    Filed 10/01/14    Entered 10/01/14 16:19:29    Desc
Main Document    Page 5 of 13

Neither the bill nor the case narrative in the fee application contained any substantive information showing the legal services Young performed or the benefit his activities rendered to the estate or the debtor. Under the circumstances, a bill of $1625 ostensibly based on his mere presence at the auction without performing legal services of any significant nature seemed excessive. Therefore, the Court reduced the fee award from $1625 to $1000.

Lastly, due to nonconformity of an entry dated June 24, 2014 to the Local Rules, the Court deducted $11.00 from the fees requested. The June 24 entry referenced a telephone call to the "USDA" made by a CGA legal assistant, but the entry does not identify the subject matter of the call as required by Local Rule 2016(a)(5)(A).

Thus, the total deductions on which the August 5 Order was based were calculated as follows:

| 2014 Date | Professional's Initials[7] | Service for which fees were reduced | Amount of deduction |
|---|---|---|---|
| 1/22 | LY | Voice mail | $ 32.50 |
| 2/18 | EHL | Voice mail | $ 20.00 |
| 2/27 | LY | 341 meeting | $ 75.00 |
| 3/4 | LY | Travel to Gettysburg | $ 130.00 |
| 3/12 | EHL | Voicemail | $ 20.00 |
| 4/10 | LY | Travel to Harrisburg | $ 81.25 |
| 6/12 | LY | Presence at auction | $ 625.00 |
| 6/24 | MCM | Phone call | $ 11.00 |
| | | TOTAL | $ 994.75 |

The Order reduced the amount awarded by $994.75 from the $21,638.50 that Young requested for total fees. The Order further provided that Young could request a hearing on his fee application, in accordance with Rule 2017(a) of the Federal Rules of Bankruptcy Procedure,

---

[7]The fee application identifies "LY" at Attorney Young, EHL as E. Haley Locke, legal assistant, and MCM as Melissa C. Miller, legal assistant. Young's billing rate is $325 per hour. Locke's billing rate is $100 per hour and Miller's is $110/hr.

6

by filing an appropriate motion within fourteen days. His motion for reconsideration and brief were timely filed.[8]

### III. Discussion

**A. Bankruptcy Code provisions controlling counsel fees**

The provisions of the Bankruptcy Code pertaining to this matter are set forth at 11 U.S.C. §§ 329 and 330. Section 329 governs a debtor's transactions with attorneys in connection with the bankruptcy case. Section 330 governs the compensation of professional persons employed by the estate, including attorneys. Section 330(a)(4)(B) provides that in a Chapter 13 case, the court "may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor . . . based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." 11 U.S.C. § 330(a)(4)(B). Relative to the matter before me, some of the "other factors" include the time spent on such services, whether the services were "necessary to the administration of" the case, or "beneficial . . . toward completion of" the case at the time the service was rendered, and whether the compensation is

---

[8]In his brief, Young asks for "guidance" as to whether a Chapter 13 debtor's attorney may accept a debtor's offer to voluntarily pay the full amount of a fee application even after the full fee request has been reduced by court order. As per *In re Wei-Fung Chang*, 438 B.R. 77, 84 (Bankr. M.D. Pa. 2010), the Chapter 13 estate includes all property acquired post-petition and payments to the trustee for the plan. Since property under Debtor's plan did not re-vest in her until closure of the case, any voluntary fee paid by her from any of these three sources – pre-petition property, payments to the trustee and post petition property – would require court approval.

If other sources of funds to be voluntarily paid to counsel are contemplated, the Court cannot address the question because to do so would be to render an advisory opinion. See *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (federal courts have no power to render advisory opinions); *Rhone-Poulenc Surfactants and Specialties, L.P. v. Comm'r of Internal Revenue*, 249 F.3d 175, 182 (3d Cir. 2001) ("to satisfy Article II's case or controversy requirement, an action must present a legal controversy that is real and not hypothetical.")

reasonable based on the customary compensation charged by comparably skilled practitioners in other fields of law. 11 U.S.C. § 330(a)(3). At section 330(a)(2), the Code allows the Court on its own motion to award compensation that is less than the amount requested. At section 329(b)(1), the Code further allows the court to order the return of payments exceeding the reasonable value of the attorney's services if the payment "was to be paid by or on behalf of the debtor under a [Chapter 13] plan." 11 U.S.C. §329(b)(1)(B).

If in performing its duties under these provisions, a bankruptcy court concludes that an attorney's fees should be denied in whole or in part, the court should "allow the [attorney] the occasion to defend his or her fee application with legal arguments and/or evidence (of market practices, etc.) at a hearing." *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 854 (3d Cir. 1994).

**B. Application of these provision by the Bankruptcy Courts**

"[A] bankruptcy judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession, will be the *starting point* for any analysis" of a fee application by debtors' counsel. *Id.* at 854 (italics in the original). "By starting point we mean to suggest that a bankruptcy judge should use his or her experience and expertise to locate the questionable charges and fees, and once having questioned a charge or fee may properly require the applicant to meet the burden to prove the market would recompense him or her for that charge." *Id.*

In the matter within, a limited number of unnecessary or excessive charges have resulted in the reduction of Young's fee award. It is noteworthy that a deduction of $994.75 from a fee request totaling $21,638.50 represents a loss of only 4.5%, while 95.5% of the charges were

8

deemed reasonable and necessary. Nonetheless, neither Section 330 nor its interpretation in *Busy Beaver* allow the Court to disregard the excesses and improprieties in the 4.5% in deference to the reasonableness and propriety of the 94.5%.[9]

In general, the fee reductions in the case within occurred in three categories: travel time, billing judgment, and failure to abide by the Local Rules governing fee applications. Each of these will be addressed in turn.

### 1. Travel Time

The Court's policy, based on its knowledge of and experience with local fee practices, allows fees to an attorney for his travel time at half his hourly rate. Such an allowance is fair and reasonable in light of the fact that driving a motor vehicle is not practicing law. "Though it may [be] necessary for [debtor's] attorneys to get to the courthouse from their offices, driving their cars is not 'legal services.' Compensation must match the level of skill required to perform the service." *Thomas v. Farmer & Ready (In re Thomas)*, Nos. CC-08-1307-HMoPa, ND 06-12129-RR, 2009 WL 7751299, *13 (BAP 9th Cir. July 6, 2009). In order to be compensated for travel time at a full hourly rate, debtors' counsel must produce "some evidence, testimony, or other information . . . to show that [his] practice of billing at full hourly rates for driving was justified and reasonable *in this case*." *Id.* (Italics added). In the matter within, neither Young's fee application nor his brief explain why Debtor should be expected to compensate him for driving

---

[9]In the Order that accompanies this Opinion, because of certain miscalculations and oversights by the Court in reviewing the Application and rendering the August 5 Order, the fees allowed Young will be reduced by 6% ($1303.50) out of the total fees requested rather than 4.5% ($994) out of the total. The difference between these percentages is insignificant for purposes of the point that percentage-wise, the fee reduction that will be ordered is a relatively small sum.

9

his car as if he had been performing legal work instead.

Attorney Young asserts that because of his distance from the Harrisburg courthouse, it is unfair to enforce a blanket rule against his full hourly rates for travel time. In other words, Young argues that on days he must travel to court, he cannot earn as much as attorneys who travel shorter distances.[10]

The difficulty with Young's argument is that it is one-sided and does not take into account the Court's duty to assess the fairness of fees *in the interests of the debtor.* The Court acknowledges the general principles set forth in *Busy Beaver* and in Section 330(a)(3)(F) that, to encourage competent attorneys to practice in the bankruptcy field, debtors' counsel should be compensated at rates equivalent to practitioners providing similar services in other fields of law. However, a bankruptcy court must *balance* the necessarily competing interests of Chapter 13 debtors and their attorneys. As noted by this Court in *In re Smith*, when examining a Chapter 13 fee application, a bankruptcy court's "bottom line consideration should be whether [the] fee is fair; both to [the] professional whose fee is sought, as well as to [the] debtor and creditors." 331 B.R. 622, 628 (Bankr. M.D. Pa. 2005) (internal quotations omitted) (citing *In re Truong,* 259 B.R. 264, 267 (Bankr. D. N.J. 2001)). Thus, compensation for travel time at half the normal hourly rate seems eminently fair and appropriate. See *In re Babcock & Wilcox Co.*, 526 F.3d

---

[10]Young's brief also argues that not only is he entitled to full-rate compensation for travel time to the Courthouse, he is also entitled to his full-rate for traveling "on those rare times I need to go to a client's property for the purpose of examining it." (Brief, p. 3). In those occasions, whether they are rare or common, Young is not at any disadvantage. His situation is no different from any other bankruptcy practitioner who deems it necessary to examine a client's property; counsel must travel to the debtor's property where he finds it. Obviously, an attorney may refer a debtor to other counsel or simply refuse to take the case if he foresees that it would require him to expend an unacceptable amount of travel time.

824, 828 (5th Cir. 2008) (collecting cases) ("numerous bankruptcy and district courts have held that it is not an abuse of discretion to discount non-working (and even working) travel time.")

### 2. Billing

In making a fee determination, a bankruptcy court must take into consideration whether the professional exercised "reasonable billing judgment." *In re Smith*, 331 B.R. at 628, (citing *In re Grosswiler Dairy, Inc.,* 257 B.R. 523, 528 (Bankr. D. Mont. 2000); *In re Mednet,* 251 B.R. 103 (9th Cir. BAP 2000)). "The court's responsibility to protect the estate is especially important in chapter 13 cases where there is little motivation for a debtor, or creditors, to object to a particular fee allowance." *In re Smith*, 331 B.R. at 628 (quoting *In re Szymczak,* 246 B.R. 774, 778 (Bankr. D. N.J. 2000)).

On January 22, 2014, Young billed Debtor $32.50 for .1 hours' time expended in leaving a voice mail with an employee at the Farm Services Administration. On February 18, and March 12, 2014, Young billed Debtor a total of $40.00 for a total of .4 hours' time expended by a CGA legal assistant in exchanging voice mail messages with Debtor. On April 8, 2014, Young billed Debtor $32.50 for .1 hours of his own time expended in checking the Court's electronic docket to determine whether the Chapter 13 trustee had continued a plan confirmation hearing set for the following day.[11] The August 5 Order denied these fees because the Court concluded that

---

[11] Young's billing entry indicates that the hearing had not yet been continued at the time he checked the hearing docket. The case docket shows that on April 8, 2014 at 4:11 p.m., the Trustee docketed a virtual entry stating that the April 9 confirmation hearing would be continued with Debtor's concurrence. Nonetheless, Young made a telephonic appearance at the hearing and then billed Debtor $32.50 for it. Since he was not required to appear at the hearing, and his appearance provided no benefit to the Debtor or the estate, Young's fees should have been reduced by an additional $32.50. The Court will make that adjustment in the Order that accompanies this Opinion.

11

Young had not exercised reasonable billing judgment in regard to these charges. It seemed highly unlikely that the act of leaving a voice mail message would take more than a single minute; and a six-minute-long voice mail (on three separate occasions) would seem extreme and perhaps even impossible depending on the time limitations imposed by the message system. Thus, the Court concluded that a charge for even six minute's time was excessive for the simple acts of listening to and returning a voice mail.

The Court is aware that it is a regular practice by non-bankruptcy attorneys in this District to bill their clients (who have agreed to pay fees on a lodestar basis) for time spent on telephone calls. The first reason for this practice is that the attorney is entitled to payment for his time – it is part of his stock in trade. But an almost equally important reason is that attorneys sometimes need a disincentive for clients to call them, or else some clients would call frequently and needlessly, wasting counsel's time. When voice mail message are involved, the danger of counsel's time being wasted is minimal, as voice mail messages are usually short, and counsel will normally either disregard them if they are unimportant or have staff return the call. See also, *In re Busy Beaver*, 19 F.3d at 856 (fee applicant must exercise "billing judgment" by, for example, "writing off [certain] cost[s] as overhead.")

### 3. Local Rules

Rule 2016-1(a)(5)(A) requires a fee application to include a chronological listing of services performed which should identify "the subject matter of any correspondence or phone call together with the party with whom that communication occurred." LBR 2016-1(a)(5)(A). In an entry dated June 24, 2014, Young billed Debtor $11 for six minutes' time expended by a CGA paralegal in a telephone call to the "USDA." Neither the subject matter of the call nor the

12

identity of the USDA employee are revealed in the fee application. Therefore, this amount was disallowed.

### 4. Revised calculation of fees

The calculation of the total deductions that should have been made from the Application is as follows. This amount will be deducted from Young's fee request.

| 2014 Date | Initials | Service for which fees were reduced | Amount of deduction |
|---|---|---|---|
| 1/22 | LY | Voice mail | $ 32.50 |
| 2/18 | EHL | Voice mail | $ 20.00 |
| 2/27 | LY | 341 meeting | $ 75.00 |
| 3/4 | LY | Travel to Gettysburg | $ 325.00 |
| 3/12 | EHL | Voice mail | $ 20.00 |
| 4/9 | LY | CourtCall for confirmation hearing | $ 32.50 |
| 4/10 | LY | Travel to Harrisburg | $ 162.50 |
| 6/12 | LY | Presence at auction | $ 625.00 |
| 6/24 | MCM | Phone call | $ 11.00 |
| | | TOTAL | $ 1303.50 |

## IV. Conclusion

For the reasons discussed above, the Motion for reconsideration filed in this matter will be denied. An appropriate Order will be entered.

By the Court,

Date: October 1, 2014

Mary D. France
Chief Bankruptcy Judge
(JK)

13